**SIGNED THIS: May 24, 2010**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                          )
                              )     In Bankruptcy
KEVIN W. BROOKS,               )
                              )     Case No. 08-72073
            Debtor.            )

| **O P I N I O N** |
|---|

Before the Court is a Second Amended Application for Compensation filed by Attorney John S. Narmont. The Application seeks an award of legal fees in the amount of $16,687.50 and the reimbursement of costs advanced in the amount of $616.04, for a total of $17,303.54. For the reasons set forth below, the Application will be allowed as to the $12,500 retainer already paid and denied as to the remainder of fees and costs requested.

-1-

## I. Factual and Procedural Background

Kevin W. Brooks ("Debtor") filed his voluntary Chapter 12 petition on August 26, 2008.  At the time of filing, Debtor was employed as an operating engineer through the Local 520 Operators Hall in Granite City, Illinois.  Debtor owned no farmland, had no pending rental or lease agreements with respect to farmland, and owned no farm equipment other than a one-half interest - valued at $2000 - in a tractor.  According to his Statement of Financial Affairs, Debtor sold virtually all of his farm equipment at an auction in January 2008.  Although Debtor was not engaged in farming at the time he filed his petition, it is undisputed that he was eligible to be a debtor under Chapter 12 due to his farming activities during 2007.  *See* 11 U.S.C. §109(f); 11 U.S.C. §101(18)(A).

On his Schedule E (Creditors Holding Unsecured Priority Claims), Debtor listed the Internal Revenue Service ("IRS") as a creditor with a claim of $230,000 for "Back Taxes - approximate amount estimated from depreciation recapture and/or grain sales. Performa (sic) income tax return is being prepared.  Amount to be amended."

On September 9, 2008, Debtor filed his Application to Employ Attorney.  The Application states that hourly rates of compensation for legal services would be $175 for Mr. Narmont and $75 for paralegals.  The Application further states that "[t]he Debtor has

-2-

paid a $12,500.00 retainer fee and costs, which is a minimal fee."[1]

The Application also states as follows:

> 9.    The Debtor (sic) reason for selection of **JOHN
> S. NARMONT** as his attorney in this matter is based on
> years of legal service, being more than 30, as well as
> the expertise in various bankruptcy matters, not the
> least of which being Chapter 12 representation. **JOHN S.
> NARMONT** has represented over 2000 Debtor (sic) in his
> practice and the Debtors (sic) believes his knowledge of
> the farming industry, having been legal counsel for the
> Illinois Department of Agriculture for more than 17 years
> is beneficial to the Debtor in his understanding of the
> uniqueness of a farming enterprise.

Application *at* p. 2 (emphasis in original).

An objection notice was sent to creditors and interested
parties.  No objections were filed, so the Application was granted
by Order entered September 29, 2008.  Debtor also filed motions to
employ an appraiser and an accountant, for which objection notices
were also sent.  No objections were filed, so separate orders were
subsequently entered granting each motion.

On November 25, 2008, Debtor filed his Chapter 12 Plan.  A
preliminary confirmation hearing was held on January 6, 2009, at
which the Court identified as problematic certain Plan provisions
regarding the payment of taxes.  The Court also noted that the Plan
was deficient in that it did not provide that professional fees
were subject to Court approval and subject to payment through the

---

[1]    The Affidavit attached to the Application is inconsistent with
the Application itself in that the Affidavit states that Mr.
Narmont's hourly rate is to be $200.  The Affidavit also refers to
the retainer as "a minimal fee."

-3-

Plan by the Trustee.  The hearing concluded with the Court granting 60 days for the filing of an Amended Plan.

After filing several motions to extend time to file an Amended Plan, Debtor filed his First Amended Chapter 12 Plan on May 4, 2009.  On the same date, Debtor filed an unsecured "proof of claim", docketed as Claim #17, on behalf of the IRS in the amount of $78,743.  The "proof of claim" was actually nothing other than Debtor's and his wife's unredacted 2008 federal and state income tax returns.  The federal return shows an unpaid income tax liability for 2008 of $78,743.

On June 22, 2009, the Trustee filed an Objection to Claim #17 on the basis that it had not been timely filed.  The government claims bar date had expired on February 21, 2009, and, therefore, the Debtor's opportunity to file a claim on behalf of the IRS had expired on March 23, 2009.  *See* Fed.R.Bankr.P. 3004.  On June 23, 2009, a hearing was held on the First Amended Chapter 12 Plan.  Mr. Narmont, the Trustee, and the Court discussed the claim filed on behalf of the IRS and whether it could be paid through the Plan. Mr. Narmont insisted that, because the transaction which purportedly gave rise to Debtor's tax liability - the sale of his farm equipment - occurred pre-petition, the resulting tax liability was also a pre-petition debt.  Both the Court and the Trustee expressed concern that Mr. Narmont had not properly considered the issue of when income taxes become due and payable and, therefore,

-4-

when such taxes may be included in a case as pre-petition obligations. Because Mr. Narmont was unable to cite any authority in support of his position, he asked for the opportunity to research the issue and to file, if necessary, a Second Amended Plan. The Court granted Mr. Narmont's request and, on June 29, 2009, Debtor filed his Second Amended Chapter 12 Plan.

On July 21, 2009, a hearing was held on the Second Amended Chapter 12 Plan. During the hearing, Mr. Narmont acknowledged that he had concluded that Debtor's 2008 federal income tax liability was not a pre-petition debt that could be included in the Plan. Mr. Narmont further admitted, however, that the Second Amended Plan needed additional revisions and requested leave to file a Third Amended Plan. An Order was entered requiring the filing of a Third Amended Chapter 12 Plan on or before August 11, 2009, and requiring fee applications from the attorney, accountant, and appraiser by September 15, 2009. Further, in the absence of any response to the Trustee's Objection to Claim #17, an Order was entered allowing the Trustee's Objection and disallowing Claim #17.

On August 11, 2009, Debtor filed his Third Amended Chapter 12 Plan. A hearing was held on the Third Amended Plan on September 22, 2009. The Court reiterated that all professional fees were to be paid through the Plan and by the Trustee, and any fees not so paid would be discharged at the end of the Plan.

On October 7, 2009, the Court entered an Order confirming the

Third Amended Chapter 12 Plan.  On October 20, 2009, Mr. Narmont
filed his First Application for Approval of Attorney's Fees.  On
November 16, 2009, the Court entered an Order pointing out a number
of deficiencies in the First Application and granting Mr. Narmont
until December 14, 2009, to supplement the First Application.  On
December 2, 2009, Mr. Narmont filed an Amended Application for
Approval of Attorney's Fees.  On January 7, 2010, the Court entered
an Order identifying remaining deficiencies in the Amended
Application.  Because the Amended Application would not justify an
award of all of the fees requested, the Court permitted - but did
not require - the filing of a Second Amended Application to correct
the deficiencies.   On January 29, 2010, a Second Amended
Application for Compensation was filed.  As indicated above,
through the Second Amended Application, Mr. Narmont seeks an award
of legal fees in the amount of $16,687.50 and the reimbursement of
costs advanced in the amount of $616.04, or a total of $17,303.54.
After credit is given for a $12,500 retainer paid pre-petition, Mr.
Narmont seeks an additional $4803.54.[2]

---

[2]

Paragraph 46 of the Second Amended Application states that the
total of fees and costs requested is $17,303.54 and acknowledges
the receipt of a retainer of $12,500.  However, it further states
that "the balance of attorney fees and cost (sic) due is
$5,303.54."  The mathematical calculation of the amount remaining
due is in error.  The incorrect figure also appears in the prayer
for relief.

## II. Compensation of Professionals

Section 330 of the Bankruptcy Code provides the statutory authority for compensating the services and reimbursing the expenses of properly employed professionals. 11 U.S.C. §330. The court may award professionals reasonable and necessary compensation for the actual and necessary services rendered. 11 U.S.C. §330(a)(1)(A). The court may also provide reimbursement of actual and necessary expenses. 11 U.S.C. §330(a)(1)(B).

Decisions from federal courts throughout the country and, in particular, within the Seventh Circuit have consistently held that bankruptcy courts have an independent duty to review professional fee applications. Cohen & Thiros, P.C. v. Keen Enterprises, Inc., 44 B.R. 570, 574-75 (N.D. Ind. 1984); In re Wildman, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). The court has a duty to examine independently the reasonableness of fees requested. In re Price, 143 B.R. 190, 192 (Bankr. N.D. Ill. 1992) aff'd 176 B.R. 807 (N.D. Ill. 1993), aff'd and remanded 42 F.3d 1068 (7th Cir. 1994); In re Wyslak, 94 B.R. 540, 541 (Bankr. N.D. Ill. 1988); In re Chicago Lutheran Hospital Association, 89 B.R. 719, 734-35 (Bankr. N.D. Ill. 1988); In re Pettibone Corp., 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987); Wildman, 72 B.R. at 705. The burden of proof to show entitlement to the fees requested is on the applicant. Price, 143 B.R. at 192; In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir. 1994); In re Spanjer Bros., Inc., 191 B.R. 738, 747

(Bankr. N.D. Ill. 1996); In re Stoecker, 114 B.R. 965, 969 (Bankr. N.D. Ill. 1990); Pettibone, 74 B.R. *at* 299; In re Lindberg Products, Inc., 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985).

In evaluating fee applications, a court must consider "the nature, the extent and the value" of the legal services rendered and must take into account a variety of factors including the time spent, the rates charged, and the benefit of the work done. 11 U.S.C. §330(a)(3). The court may not award compensation for services that the court finds were not reasonably likely to benefit the estate or the debtor, or were not necessary to the administration of the case. 11 U.S.C. §330(a)(4)(A)(ii) & (B). Because this is a Chapter 12 case, the Court may award fees and costs based principally on the benefit of the services rendered to Debtor even if such services are not shown to have directly benefitted the estate. *See* 11 U.S.C. §330(a)(4)(B).

The Second Amended Application raises several issues with respect to the evaluation of professional fee applications, each of which is examined below.

### III. Compensation of Paraprofessionals

Reasonable and necessary services rendered by paraprofessionals employed by trustees, attorneys, and other professionals are specifically included as compensable services under the Bankruptcy Code. *See* 11 U.S.C. §330(a)(1)(A); *see also*

In re Gvazdinskas, 2010 WL 1433308 *at* \*3 (Bankr. C.D. Ill. Apr. 8,
2010).  When "the services provided by the paraprofessional
represent a shift of tasks ordinarily performed by a lawyer or
other professional, and the service is reasonable and necessary,
the service is compensable."  In re CF & I Fabricators of Utah,
Inc., 131 B.R. 474, 489 (Bankr. D. Utah 1991).  However, if
clerical or other secretarial work is assigned to the
paraprofessional, then the work is charged to overhead and cannot
be separately charged to the client.  Id.  The same is, of course,
true if clerical tasks are performed by an attorney or other
professional.  Work which is clerical in nature does not become
compensable legal work because it is performed by an attorney, a
paralegal, or another professional.

To determine whether a paralegal's work is compensable legal
work, a court must "look at the kind of services that are
traditionally charged to overhead, the amount of independence
allowed to the paraprofessional, the experience or education
required to accomplish the assignment, the responsibility delegated
to the paraprofessional, and the amount of supervision retained by
the professional."  Id. *at* 489-90. When an applicant for
professional fees seeks compensation for a paraprofessional's work,
the paraprofessional's experience and qualifications must be
stated.  Id. *at* 493. Even if the work is, in fact, clearly legal
in nature, the work is not compensable under §330 unless the person

rendering the services has sufficient knowledge and expertise to perform substantive legal work. Therefore, time spent by general clerical staff advising clients, drafting documents, and the like is not compensable under §330.

Through the Second Amended Application, Debtor seeks the allowance of fees for the services rendered by Timothy Mix and Deborah Pomeroy, both of whom are identified therein as paraprofessionals. The Second Amended Application seeks fees at a rate of $75 per hour for both Mr. Mix and Ms. Pomeroy, and the itemization which is part of the Second Amended Application claims that Mr. Mix and Ms. Pomeroy collectively expended 69.2 hours of billable time in the case. Thus, their fees total $5,190, or 31.1% of the total fees requested. Their primary activities involved case administration (30.3 hours), work on "plan and disclosure statement"[3] (18.9 hours), and work on fee/employment applications (14.6 hours).

### III(A). Mr. Mix

The Second Amended Application states that Mr. Mix has been assisting Mr. Narmont for approximately eight years and that, because Mr. Mix is involved in farming, he "is familiar with the unique issues associated with farming and farmers." The Second

---

[3]     Disclosure statements are not required in cases filed under Chapter 12 of the Bankruptcy Code.

Amended Application does not set forth any training, education, or certifications which Mr. Mix may have.

Based upon the work product attributable in this case to Mr. Mix, it has not been demonstrated that Mr. Mix has either the education, experience, training, or expertise to perform compensable legal services. For example, on September 2, 2008, Mr. Mix charged .5 hour for preparation of a motion to employ an appraiser. On October 19, 2008, Mr. Mix charged .5 hour for "Revise Order on Appraiser". In this case, there was nothing to appraise because Debtor owned no farmland and virtually all of Debtor's farming equipment had been sold many months before the case was filed. No appraisal services were performed, and no application for compensation by an appraiser was ever filed. Consequently, legal services for the preparation of such a motion and order could not be characterized as either reasonable or necessary.

In addition, the motion to employ appraiser is substantively identical to similar motions filed by Mr. Narmont in other Chapter 12 cases. The motion filed herein includes an "Affidavit of Proposed Appraiser" which contains names of debtors and a case number in a caption for a separate and unrelated case. The Affidavit is inexplicably dated November 23, 2005, and bears the electronic signature of Mr. Mix as notary. As to the "Order on Appraiser", it is unclear why revisions were necessary, but the

-11-

Order itself consisted of one page of sparse, boilerplate text. These blunders strongly suggest that Mr. Mix's "preparation" of the motion and order consisted of not much more from a quantitative standpoint than changing a few words and numbers on two forms. From a qualitative standpoint, his work product was deficient in multiple respects, which strongly suggests that Mr. Mix either lacks the education, experience, training, or expertise to perform compensable legal services, or that he received inadequate supervision from Mr. Narmont.[4]

The itemization attached to the Second Amended Application also illustrates that Mr. Mix billed for time and services which were also billed by Mr. Narmont.  For example, Mr. Mix charged 1.2 hours on October 1, 2008, for a client meeting following the first meeting of creditors.  Mr. Narmont also charged 1.5 hours for the same meeting.  It is certainly within Mr. Narmont's discretion to include as many members of his staff as he chooses in client meetings.  However, staff time attending such meetings does not, thereby, become compensable.

Mr. Mix also charged 1.5 hours on January 6, 2009, for "[a]ttend hearing at court".  The hearing held on that date was a non-evidentiary hearing which lasted approximately 15 minutes.

---

[4]
Similarly, Mr. Mix charged .5 hour on January 14, 2009, for preparation of the same type of bare-bones order authorizing employment of an accountant "during the coarse (sic) of the Chapter 12".

While there are certainly instances where it is reasonable to utilize and charge for the time of a paraprofessional staff member or another attorney for assistance in court proceedings, this hearing was not such an instance. There were no exhibits or witnesses to manage, and Mr. Mix's role in the hearing could only be described as that of an observer. Mr. Mix's presence in court on that date was unnecessary and charging for his attendance cannot be justified. The same holds true with respect to Mr. Mix's charges for attending hearings in 2009 on June 23, July 21, and September 22.

Two specific examples of his work provide further evidence that Mr. Mix does not possess the education, experience, training, or legal expertise to perform legal services for which compensation can be awarded. First, the Second Amended Application shows that Mr. Mix initially met with Debtor on August 20, 2008, and spent an hour with Debtor preparing the petition and "discussing the various types of bankruptcies." On August 22, 2008, Mr. Mix again met with Debtor for almost two hours to "sign, review and advise as to changes which may be needed." What the Second Amended Application does not disclose is that, on August 22, 2008, a petition was filed for Debtor under another case number which was promptly dismissed because Debtor had failed to obtain mandatory credit counseling during the 180 days preceding that case filing. *See* 11 U.S.C. §109(h)(1). The time records indicate that it was only after the

-13-

dismissal of the first case that Mr. Mix discussed the need for
credit counseling with Debtor and assisted Debtor in obtaining that
counseling.   Although the time records show some review of the
initial petition by Mr. Narmont prior to its filing, the time
records do not show that Mr. Narmont even met with Debtor before
either case was filed, suggesting that Mr. Mix was delegated full
responsibility for meeting with Debtor, advising him on all
relevant issues, and filing the case.   Mr. Mix's apparent lack of
knowledge that individual debtors are required to obtain credit
counseling before filing strongly suggests that Mr. Narmont's
delegation of so much authority to Mr. Mix was inappropriate.

        Second, Mr. Mix's billing entries show a significant amount of
time working on various issues related to Debtor's tax problems.
However, because the time records show that Mr. Mix filed this case
within days of meeting with Debtor before doing any research on tax
issues, and apparently not knowing that a tax liability which was
not yet due might not be a pre-petition debt, it appears that he
made the first in a series of missteps which ultimately led to
Debtor's inability to address his tax problems through his Chapter
12 case.   Further, according to the time records, Mr. Mix appears
to have been given the responsibility of filing the IRS claim in
the event the IRS failed - as it did - to file its own claim.   This
was an important responsibility because it certainly could have
been anticipated that the IRS would not file a claim for taxes not

-14-

yet due and for which no return had yet been filed. Nevertheless, Mr. Mix missed the deadline and then filed only the unredacted income tax returns unaccompanied by a proof of claim form. All of this strongly indicates that Mr. Mix lacked even the most rudimentary knowledge of the law and procedures required in order to qualify him to do the substantive legal work that was apparently delegated to him by Mr. Narmont. For the aforesaid reasons, the fees sought for the time charged by Mr. Mix can neither be justified nor allowed.

### III(B). Ms. Pomeroy

The Second Amended Application states that Deborah Pomeroy has worked as a legal assistant and paraprofessional for Mr. Narmont for approximately two years and had previously been a legal secretary for 15 years. The Second Amended Application does not set forth any training, education, or certifications which Ms. Pomeroy may have.

Based upon the work product attributable in this case to Ms. Pomeroy, it is clear that Ms. Pomeroy does not have either the training, legal knowledge, or expertise to perform compensable legal services and that she is a clerical employee who rendered primarily clerical services in this case.

Many of the entries on the itemization attached to the Second Amended Application which are attributable to Ms. Pomeroy are shown

-15-

as no-fee clerical services.  For example, "[l]oad petition onto computer", "[l]etter to client enclosing proof of claim...", and "[u]ploaded Chapter 12 Plan" are all clerical services performed by Ms. Pomeroy for which no fee is sought.

Some of the services performed by Ms. Pomeroy for which fees are sought, however, are also clearly clerical, but are described in a manner so as to depict them as legal in nature.  For example, on September 26, 2008, Ms. Pomeroy charged .7 hour for "[i]ndependently prepar[ing] letter to Trustee enclosing identification, social security information, monthly report, ownership of account information, and summary of operation".  Despite the enumeration of the enclosures, Mr. Pomeroy did nothing on this occasion other than prepare and send a transmittal letter.  That is a clerical - not legal - task.  Similar entries for which fees are sought are dated 10/18/08 ("[i]ndependent preparation of letter to trustee enclosing requested documents"), 10/28/08 ("[l]etter to client enclosing proof of claim filed by GCS Federal Credit Union"), 11/18/08 ("[p]repare letter to client enclosing proof of claim filed by Cargill, Inc."), 12/24/08 ("[l]etter to client enclosing proof of claim filed by GE Consumer Finance"), 01/03/09 ("[l]etter to client enclosing proof of claim filed by GE Money Bank d/b/a Lowe's"), 01/06/09 ("[l]etter to client enclosing proof of claim filed by Agrigold for goods sold in the amount of $31,118.16"), 01/08/09 ("[l]etter to client enclosing proof of

-16-

claim filed by IRS"), and 08/05/09 ("[l]etter to client enclosing Amended Proof of Claim filed by GMAC").

With respect to other services performed by Ms. Pomeroy - services which may accurately be characterized as legal in nature - it is not clear in any respect that Ms. Pomeroy was qualified to perform such services.  Ms. Pomeroy's experience working for Mr. Narmont and her years of employment in another law office do not, by themselves, qualify her to perform compensable legal services or establish such qualification.  Although the Second Amended Application characterizes her as a paraprofessional, the information contained in the itemization attached simply does not at all support that characterization.  Because Ms. Pomeroy was not a qualified paraprofessional, all of her time expended in this case must be considered as law office overhead for which compensation cannot be awarded.

## IV. Necessity and Value of Professional Services

An applicant for an award of professional fees must demonstrate the necessity of the services and that the value provided by the services justifies the fees being sought.  *See* 11 U.S.C. §330(a)(3); *see also* <u>Gvazdinskas</u>, 2010 WL 1433308 *at* *5-6. For cases filed under Chapter 11, the services for which compensation is sought must be shown to have been "reasonably likely to benefit the debtor's **estate**[.]" 11 U.S.C.

§330(a)(4)(A)(I) (emphasis added).  In contrast, for cases filed under Chapter 12 or Chapter 13, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of **the debtor** in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor..."  11 U.S.C. §330(a)(4)(B) (emphasis added).

In his Application to Employ Attorney, Mr. Narmont portrays himself as a farming and bankruptcy expert.  If that is so, it was manifestly not evident here, primarily because this case was never a "farming case".  It was always a "tax case".  At the time he sought Mr. Narmont's counsel, Debtor was not conducting any kind of farming operation.  Rather, he was employed full-time as an operating engineer.  Debtor may have had aspirations to return to some sort of farming enterprise, as Mr. Narmont represented in court on multiple occasions.  However, Debtor's legal and financial problems related to his income tax liability, not his operation of a farming enterprise.

Federal taxes are considered due and owing and constitute a liability as of the date the tax return for the particular period is required to be filed.  Federal Deposit Insurance Corp. v. U.S., 654 F. Supp. 794, 806-07 (N.D. Ga. 1986) (collecting cases).  The determination of when a tax liability has become due and payable and, therefore, may form the basis for the filing of a claim for a

-18-

pre-petition debt in a bankruptcy case has been the subject of considerable litigation. *See*, *e.g.,* In re Ripley, 926 F.2d 440, 444 (5th Cir. 1991) (where debtors filed bankruptcy in November of one year and filed tax return in May of the following year, taxes due and "payable" pursuant to the return were post-petition taxes regardless of the fact that bulk of income shown on return was earned pre-petition); In re Dixon, 218 B.R. 150, 152 (10th Cir. BAP 1998) (debtors' tax liability became "payable" at close of tax year and was, therefore, a pre-petition liability in case filed shortly after the first of the year, even though tax return was not due until post-petition date of April 15th).

A full analysis of the treatment of tax liabilities and tax claims in bankruptcy cases would be a complex undertaking and is beyond the scope of this Opinion. Such analysis should not, however, have been beyond the scope of Mr. Narmont's efforts when he undertook to represent the Debtor and accepted a $12,500 retainer to do so. Mr. Narmont's failure to identify, much less substantively address, crucial tax issues is troubling and must result in the denial of fees in excess of those for which payment has already been made.

Here, Debtor's case was filed within days of Debtor's first meeting with Mr. Mix and, if the time records are correct, without Mr. Mix or Mr. Narmont having done any research on the issues relating to whether income taxes not due or payable until 2009

-19-

could be considered a pre-petition debt in a case filed in August 2008. Further, despite time records which indicate thousands of dollars in time being spent working on tax issues and plan issues related to the payment of the tax claim, Mr. Narmont appeared at the hearing on June 23, 2009, apparently unaware of the relevant issues. Time records indicate that only after that hearing did Mr. Narmont do the required research on the key issues.

Debtor's 2008 income tax liability is not being paid through the confirmed Plan, and the Plan makes clear that such taxes will not be discharged upon completion of Plan payments. Based on representations made in the Second Amended Application, Debtor's strategy now is to hope that the IRS will simply go away and not pursue him. The IRS may, of course, choose not to pursue Debtor to collect the indebtedness. It is difficult to envision, however, how over $16,000 in attorneys fees could reasonably have been incurred in developing such a strategy.

To the extent the professional services provided in this case were beneficial to Debtor, it was primarily thanks to an accountant who prepared a federal return reducing Debtor's and his wife's 2008 income tax liability from an anticipated amount of approximately $230,000 as stated on Schedule E to an actual amount of $78,743 as stated on the return. Evidently, this process was not nearly as arduous as the Second Amended Application and itemization would suggest because the accountant - Vicki L. McGuar - requested

-20-

professional fees in this case of only $300.

Nonetheless, Debtor evidently perceives that Mr. Narmont's efforts on his behalf have been of some benefit.  The Second Amended Application states that Debtor has approved the requested fees.  As stated above, the benefit to Debtor is a factor to be considered by this Court in reviewing the Second Amended Application.  Although this Court sees insufficient benefit to justify even the $12,500 retainer, because Debtor apparently sees enough benefit not to object to Mr. Narmont's fees, the Court will not order any disgorgement of fees already paid.  However, based upon the results obtained and the value of the legal advice and services provided, there is simply no justification for an award of any sum greater than what Mr. Narmont has already been paid, and the unpaid balance of fees and costs sought must be denied.

## V. Waiver of Fees

Finally, one of the noteworthy differences between the original Chapter 12 Plan and First Amended Plan on one hand and the Second Amended Plan and Third Amended Plan on the other is found at Part V of all four documents.  The original Plan and First Amended Plan provide for the full payment of costs and expenses of administration on or before January 1, 2014, the contemplated completion date of the Plan.  In the Second Amended Plan and Third Amended Plan, however, Part V provides for the full payment of

costs and expenses of administration on or before January 1, 2014, "but excluding the Debtor's attorney fees, which may be paid post discharge[.]"

The attempted exclusion of Debtor's attorney fees from discharge raises potential ethical concerns, breach of fiduciary duty issues, as well as potential violation of the discharge injunction issues.[5]  It is also completely ineffectual inasmuch as the Seventh Circuit has unequivocally held that pre-petition debts for legal fees are subject to discharge.  *See* In re Bethea, 352 F.3d 1125, 1129 (7th Cir. 2003) ("Nothing in the Code permits a categorical exception [from discharge] for any kind of debt other than one listed in §523 - and legal fees are not on that list.").  Furthermore, no exception for unpaid professional fees exists in the discharge provisions of Chapter 12.  *See* 11 U.S.C. §1228(a). Fees for services provided post-petition pursuant to a pre-petition contract are also not excepted from discharge.  *See* Bethea, 352 F.3d *at* 1129 (declining to follow In re Hines, 147 F.3d 1185 (9th Cir. 1998)).

Consequently, even if this Court did award additional fees, such fees could not be collected by Mr. Narmont post-discharge.

---

[5]
    The Third Amended Plan does not contain any of the disclosures or other provisions necessary to make it a binding reaffirmation agreement.  *See* 11 U.S.C. §524(c).  Further, the Third Amended Plan was signed by Mr. Narmont on behalf of Debtor, rather than by Debtor directly.

Further, Debtor could not voluntarily pay any fees awarded prior to receiving his anticipated Chapter 12 discharge because he has committed all of his disposable income to his Plan payments. For unknown reasons, and despite the Court's warnings about inclusion of payments for professional fees in the Third Amended Plan, Mr. Narmont chose to include language which effectively constituted a binding waiver of his right and ability to collect further payments for fees or costs from Debtor.

## VI. Conclusion

The total fees claimed for the purported professional services of Mr. Mix and Ms. Pomeroy are $5,190, and denial of those fees alone constitutes a sufficient basis to disallow any further compensation requested in the Second Amended Application. Furthermore, the quality of the legal services performed in this case simply does not justify the compensation requested. Finally, the confirmed Third Amended Chapter 12 Plan makes no provision for the payment of any additional fees, and the attempt by Mr. Narmont to exclude such fees from discharge was ineffectual. For all of these the reasons, the Second Amended Application for Compensation will be allowed only in the amount of the $12,500 retainer already paid and denied as to the remaining $4803.54 requested.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy

Procedure.

See written Order.

###